IN THE COURT OF CRIMINAL APPEALS
OF TEXAS



NO. PD-0646-13




IRVING MAGANA GARCIA, Appellant

v.

THE STATE OF TEXAS



ON APPELLANT’S PETITION FOR DISCRETIONARY REVIEW
FROM THE THIRTEENTH COURT OF APPEALS
HIDALGO COUNTY



                      Keller, P.J., delivered the opinion of the Court in which Meyers, Price,
Womack, Keasler and Hervey, JJ., joined. Alcala, J., filed a dissenting opinion in
which Johnson and Cochran, JJ., joined.

            The question in this case is whether the record must contain a waiver colloquy between the
trial judge and the defendant before an appellate court may conclude that a defendant has waived his
right to an interpreter. We hold that the record does not have to contain such a colloquy, as long as
the record otherwise affirmatively reflects that a waiver occurred. Concluding that the record
affirmatively reflects a waiver in the present case, we affirm the judgment of the court of appeals.
I. BACKGROUND
A. Trial
            Appellant is a native Spanish speaker who does not understand English. The trial judge was
aware of this fact at trial but did not appoint an interpreter. 
            At a motion-for-new-trial hearing, appellant’s trial counsel testified that (1) he is fully
bilingual and had conversations with appellant in Spanish, (2) he told appellant that he did not want
an interpreter because it would be very distracting for the jury and it would make it harder for him
to concentrate on what he was doing,


 (3) he told appellant that he would provide a very brief
summary of each witness’s harmful testimony after the testimony or on break, which he did, and (4)
when he told appellant that he did not want an interpreter, appellant replied (in Spanish), “Whatever
you want.” Trial counsel also testified that he did not explain to appellant that his right to have the
proceedings interpreted in Spanish was based upon the Confrontation Clause in both the federal and
state constitutions. When asked “whether or not the Defendant was aware he could have gotten an
interpreter from the Judge so that the client could understand the Spanish language,” trial counsel
responded, “I don’t believe so, sir.” Trial counsel was further asked, “Was there ever a hearing
where you and the client, in front of the Judge, waived his right to have an interpreter?” Trial
counsel replied, “I don’t believe so.” When asked whether he ever told the judge that he did not
want an interpreter, trial counsel replied, “I don’t believe I did.” 
            Appellant also testified at the motion-for-new-trial hearing. He explained that counsel told
him that he had a right to an interpreter but that counsel said he would not recommend that because
having one would distract him and not let him concentrate very well. Appellant also testified that
he agreed to not request an interpreter because [if he had an interpreter] his attorney was not going
to be able to concentrate in defending him.
            The prosecutor testified that she asked defense counsel before trial, “Aren’t you going to have
an interpreter for your client?” According to the prosecutor, defense counsel told her that he did not
want one and that he did not really want his client to know what was going on. The prosecutor also
stated that the judge was informed by defense counsel that the defendant was not going to need an
interpreter.



            The trial judge stated, “I find that [appellant] waived the right to an interpreter. He waived
it verbally. He never objected to an interpreter not being present, and, I mean, that’s what I recall
of the case. He knew about the interpreter and he didn’t want an interpreter and, therefore, we didn’t
give him an interpreter.” When asked if that waiver was on the record or off the record, the trial
judge responded, “The Court finds that the Court talked to [appellant] and [trial counsel]. I want to
say it was up here on the bench where we were talking and he said he didn’t want one, so it’s a
waiver.”



B. Appeal
            On appeal, appellant contended, inter alia res, that the trial judge erred in failing to sua
sponte appoint an interpreter. The court of appeals concluded that there was evidence that trial
counsel informed the trial court and the prosecutor that appellant did not want an interpreter.


 The
court also concluded that, although the evidence was conflicting, the trial judge could have
determined that appellant voluntarily and knowingly waived the appointment of an interpreter
because appellant knew that he had the right to an interpreter, understood counsel’s reasons for
waiving that right, and agreed with him.


 Finally, the court of appeals concluded that the trial judge
recollected that appellant waived his right to an interpreter during an unrecorded bench conference.


 
Reviewing the evidence in the light most favorable to the trial judge’s ruling, the court of appeals
held that the record established that appellant “effectively made an express waiver of his right to a
translator.”



II. ANALYSIS
             In Marin v. State, we held that our system contains three distinct categories of rules: (1)
absolute requirements and prohibitions, (2) rights that must be implemented unless expressly waived,
and (3) rights that are to be implemented upon request.


 No one disputes that the right at issue here
falls under the second category; that is, when the trial judge knows that the defendant cannot
understand English, an interpreter must be appointed for the defendant unless the defendant waives
such appointment.


 The question at issue here is what constitutes a “waiver” under Marin. We
explained in that case that, unlike the third category of rules, in which rights are forfeited through
inaction alone, “waivable rights . . . do not vanish so easily.”


 More specifically, we said, “Although
a litigant might give them up and, indeed, has a right to do so, he is never deemed to have done so
in fact unless he says so plainly, freely, intelligently, sometimes in writing and always on the
record.”


 We must explore in the present case what we meant in Marin when we said that the
waiver of a waivable-only right must be “on the record.” 
            For this statement, the Marin decision cited Goffney v. State.


 In Goffney, the defendant
waived the right to counsel at trial and represented himself.


 We held that “the record must be
sufficient for the reviewing court to make an assessment that the defendant was made aware of the
dangers and disadvantages of the self-representation.”


 In connection with that holding, we quoted
an oft-quoted passage from Carnley v. Cochran


:
Presuming waiver from a silent record is impermissible. The record must show, or
there must be an allegation and evidence which must show, that an accused was
offered counsel but intelligently and understandingly rejected the offer. Anything
less is not waiver.



 
            The Supreme Court has quoted this exact passage in several of its landmark decisions,
including Miranda v. Arizona,


 Boykin v. Alabama,


 and Barker v. Wingo.


 In Barker, the Court
observed that it had previously defined waiver, in Johnson v. Zerbst,


 as “an intentional
relinquishment or abandonment of a known right or privilege.”


 A few sentences later, the Court
quoted the passage from Carnley regarding the need to show waiver on the record and then stated,
“The Court has ruled similarly with respect to waiver of other rights designed to protect the accused.
See, e.g. Miranda v. Arizona [and] Boykin v. Alabama.”



            Our citation to Goffney in Marin indicates that we were not creating a state-law concept of
waiver but were referring to the concept of waiver described by the United States Supreme Court in
its constitutional jurisprudence. That waiver jurisprudence includes the Johnson definition of waiver
and the Carnley explanation of how waiver must be shown for the purpose of appellate review. With
respect to the present case, the key part of the Carnley passage is the phrase “or there must be an
allegation and evidence which must show.” The Supreme Court was not content to simply say that
the “record” must show a waiver. It added an alternative way of showing the waiver through “an
allegation and evidence.” The “allegation and evidence” phrase indicates that an appellate court can
determine that a valid waiver has occurred even if the record fails to contain a waiver colloquy—so
long as there is other evidence that a valid waiver actually occurred. 
            This conclusion is supported by subsequent caselaw from the Supreme Court and from us. 
Miranda v. Arizona requires a waiver of the right to remain silent and the right to counsel prior to
custodial interrogation for statements to be admissible in the State’s case-in-chief at trial.


 In North
Carolina v. Butler,


 the Supreme Court addressed whether the waiver of those rights had to be
explicit. The Supreme Court concluded that it did not: “An express written or oral statement of
waiver of the right to remain silent or of the right to counsel is usually strong proof of the validity
of that waiver, but is not inevitably either necessary or sufficient to establish waiver.”


 Although
mere silence is not enough to establish a waiver of Miranda rights, “in at least some cases waiver
can be clearly inferred from the actions and words of the person interrogated.”


 The Court further
commented that “[w]e do not today even remotely question the holding in Carnley v. Cochran,
which was specifically approved in the Miranda opinion.”


 The Court quoted the Carnley passage
that we have quoted above and said, “This statement is consistent with our decision today, which is
merely that a court may find an intelligent and understanding rejection of counsel in situations where
the defendant did not expressly state as much.”


 
            Boykin v. Alabama requires that the record reflect a waiver of certain rights necessary to
make a plea of guilty voluntary.


 In Davison v. State,


 we were called upon to determine whether
the record was sufficient to demonstrate compliance with Boykin. The defendant entered an open
plea of guilty to the offense of burglary of a building, ordinarily a state-jail felony, but he pled true
to felony enhancement paragraphs that made him susceptible to punishment as a second-degree
felon.


 The record contained an explicit admonishment from the trial court on the range of
punishment for a state-jail felony (180 days to two years) before the defendant pled guilty, but “[a]t
no point in any of these proceedings did the trial court ever formally admonish the [defendant] that,
as enhanced, the charges . . . exposed him to a range of punishment, as a second degree felon, of two
to twenty years.”


 At the punishment phase, however, a probation officer testified that the defendant
was subject to punishment for a second-degree felony, and, before closing arguments at punishment,
the trial judge remarked that the enhancement provisions made the offense “punishable by two to
twenty.”



            We assumed, without deciding, that a silent record concerning the range of punishment
would violate the Boykin requirement that the prerequisites of a voluntary guilty plea be spread on
the record.


 But we held that the record was not totally silent because the trial judge explicitly
referred to the second-degree-felony punishment range at the punishment phase of trial and the
defendant did not exhibit any alarm at that time.


 We concluded that it was legitimate to infer from
the defendant’s nonchalance that he was aware of that punishment range at the time he entered his
plea.


 We did not foreclose the possibility that the defendant could show in a post-conviction
habeas corpus proceeding that he was in fact unaware of the applicable range of punishment at the
time of his plea.



            In line with the holdings in Butler and Davison, we conclude that the record in the present
case sufficiently reflects that appellant knowingly, intelligently, and voluntarily waived his right to
an interpreter. The record here contains evidence that trial counsel told appellant that he had a right
to an interpreter, that appellant agreed with counsel not to request an interpreter, and that appellant
and counsel communicated their desire not to have an interpreter to the trial judge, albeit in an off-the-record bench conference. Under these facts the record on appeal sufficiently reflects that a valid
waiver took place.


 
            We affirm the judgment of the court of appeals.
Delivered: April 9, 2014
Publish